UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 05/13/2024
```

RANDY ANDERSON, et al.,

Plaintiffs,

-against-

THE CITY OF MOUNT VERNON, et al.,

Defendants.

No. 23 Civ 3963 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge

Randy Anderson, Heyward Bradshaw, Olante Bradshaw, Richard Bailey, Robert Dean, Corey Harley, Thaddeus Jones, Jonathan Long, Keith Reynolds, Eduardo Rosa, and Delroy Rose (collectively, "Plaintiffs") bring this action against the City of Mount Vernon (the "City"), Det. Camilo Antonini, Sgt. Pedro Abreu, Sgt. Wendell Griffin, Officer Steven Beato, Det. Peter Vitelli, Officer Allen Patterson, and Officer Abdu I. Lawrence (collectively, the "Defendant Officers", and with the City, "Defendants") in the Complaint. ("Compl.," ECF No. 1.) Plaintiffs assert nine causes of action: (i) a 42 U.S.C. § 1983 ("Section 1983") claim for illegal search and seizure; (ii) a Section 1983 claim for false arrest; (iii) a Section 1983 claim for malicious prosecution; (iv) a Section 1983 claim alleging a failure to intervene; (v) a Section 1983 *Monell* claim; (vi) a Section 1983 claim alleging supervisory liability; (vii) a state-law claim for malicious prosecution; (viii) a state-

1

law claim for intentional infliction of emotional distress; and (ix) a state-law claim for "Respondeat Superior Liability." (*See id.*)

The Defendants move to partially dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6). (the "Motion", ECF No. 35.) For the following reasons, Defendants' Motion is GRANTED.

## BACKGROUND

### I.   Factual Background

The following facts are taken from the Complaint and assumed to be true for the purposes of Defendants' Motion.

On May 12, 2020, Plaintiffs "were gathered and hanging out" on a public sidewalk in the City of Mount Vernon. (Compl. ¶ 26.) Plaintiffs were not engaged in any criminal activity. (*Id.* ¶ 27.) Shortly after 5:30 p.m., marked and unmarked Mount Vernon Police Department ("MVPD") vehicles pulled up, and MVPD officers leapt out with guns drawn shouting for Plaintiffs and others to get down on the ground. (*Id.* ¶ 30.) Plaintiffs were handcuffed and transported to MVPD headquarters. (*Id.* ¶ 33-34.) At headquarters, each Plaintiff was taken to a separate cell where they were strip and/or body cavity searched. (*Id.* ¶ 39.) Specifically, the Complaint alleges that Plaintiff: (1) Harley was strip and body-cavity searched by Antonini (*id.* ¶ 42); (2) Rosa was strip searched by Det. Antonini (*id.* ¶ 43); (3) Long was strip searched by Patterson (*id.* ¶ 144); (4) Bailey was strip searched by "[o]ne of the Defendant Officers, or an MVPD Officer" *(id.* ¶ 45)*; (5) Dean was strip searched by Antonini in the presence of Griffin and Patterson (*id.* ¶ 46); and (6) Anderson, H. Bradshaw, O. Bradshaw and Rose were strip search and/or body cavity searched by "one of the Defendant Officers or another MVPD Officer" (*id.* ¶ 47). Later, "each and every case against [the Plaintiffs] stemming from their unlawful May 12, 2020 arrests was dismissed." (*Id.* ¶ 49.)

2

Plaintiffs additionally allege that the City was on notice that MVPD officers, including Defendants Abreu, Griffin, Antonini and Vitelli, made illegal arrests and conducted illegal strip and body-cavity searches. (*Id.* ¶¶ 50, 55.) Plaintiffs allege that "successful" lawsuits, as well as civilian complaints, have been brought against the City and MVPD officers regarding this issue. On May 10, 2023, the Westchester County District Attorney's Office announced that it would be seeking to vacate certain convictions from a 2017 law enforcement operation known as "Operation Crackdown" because of inconsistencies between undercover reports and police reports. (*Id.* ¶ 61.)

## II.    Procedural History

Plaintiffs filed their Complaint on May 11, 2023. (*See* ECF No. 1.) On October 26, 2023, Defendants filed the instant Motion (ECF No. 35), as well as a memorandum of law (ECF No. 38) and reply (ECF No. 39), in support thereof. Plaintiffs filed an opposition to Defendants' Motion. ("Pltfs' Opp.", ECF No. 37.)

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), for "failure to state a claim upon which relief can be granted," a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court will accept the facts in a complaint as true "and then determine whether they plausibly give rise to an entitlement to relief." *Id*. A claim is facially plausible when the factual content pleaded allows the Court "to draw a reasonable inference that the defendant is liable for

3

the misconduct alleged." *Id*. at 678. Ultimately, determining whether a complaint states a facially plausible claim upon which relief may be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

## DISCUSSION

### I.     Lack of Personal Involvement

It is well settled that in order to hold a defendant responsible for a constitutional deprivation, a plaintiff must demonstrate, *inter alia*, the defendant's personal involvement in the deprivation. *Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013). To do so, the plaintiff must "allege a tangible connection between the acts of a [d]efendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Grullon*, 720 F.3d at 139 (citation, italics, and quotation marks omitted). These five categories "still control[ ] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017). Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted).

Here, Plaintiffs fail to allege facts indicating personal involvement by Defendants Abreu, Beato, Vitelli, or Lawrence. The Complaint does not directly connect any of these four defendants

to the allegedly unlawful arrests or strip searches suffered by Plaintiffs. Instead, Plaintiffs contend that by lumping in these four defendants with all the Defendant Officers, they have satisfied the personal involvement requirement. (*See* Pltf's Opp. at 20.) But "[i]t is well-established in this Circuit that plaintiffs cannot simply 'lump' defendants together for pleading purposes." *McClean v. Cnty. of Westchester*, No. 17-CV-4492 (CS), 2018 WL 6329420, at *6 (S.D.N.Y. Dec. 3, 2018) (quoting *Canon U.S.A., Inc. v. F & E Trading LLC*, No. 15-CV-6015, 2017 WL 4357339, at *7 (E.D.N.Y. Sept. 29, 2017)), *aff'd sub nom. McClean v. City of Mount Vernon*, 776 F. App'x 725 (2d Cir. 2019); *see also Ritchie v. N. Leasing Sys., Inc.*, 14 F. Supp. 3d 229, 236 (S.D.N.Y. 2014). "Pleadings that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a claim." *Goodman v. Bd. of Managers of Harborview Condo.*, No. 22-CV-1813 (CS), 2023 WL 6977450, at *5 (S.D.N.Y. Oct. 23, 2023) (quoting *Ying Li v. City of N. Y.*, 246 F. Supp. 3d 578, 598 (E.D.N.Y. 2017) (collecting cases)). *Cf. Buari v. City of New York*, 530 F. Supp. 3d 356, 390 (S.D.N.Y. 2021) (holding that plaintiff adequately alleged personal involvement by specifying "which [d]efendants were personally involved in the alleged constitutional violations"). As such, Plaintiffs cannot rely on such group pleading to satisfy the Second Circuit's personal involvement requirement.

With regard to Defendants Abreu and Vitelli in particular, Plaintiffs allege that "[a]ccording to the MVPD Manual, Defendants Antonini, Abreu, Griffin, and Vitelli, by virtue of their ranks, were obligated to supervise other members of the MVPD, including Defendant Officers named herein," but "[d]espite these responsibilities, neither Defendant Antonini, Abreu, Griffin, and Vitelli, took any action to ensure that Plaintiffs were not" illegally arrested or strip searched. (Compl. ¶¶ 53-54.) In other words, Plaintiffs appear to argue that merely by virtue of Defendants Abreu and Vitelli serving as supervisors, they are responsible for any constitutional deprivation

that Plaintiffs allegedly suffered at the hands of members of the MVPD. This is not so – to plead Section 1983 liability, Plaintiffs need to allege the Defendants were "present" for the alleged violations or "participated directly" in or "somehow permitted" the alleged violations. *See Falls v. Pitt*, No. 16-CV-8863, 2018 WL 3768036, at *6 (S.D.N.Y. Aug. 8, 2018). Plaintiffs do not allege that Defendants Abreu and Vitelli were present for, participated in, or even had any notice about Plaintiffs' arrests and/or strip searches.[1] Plaintiffs' accusations against the two defendants, therefore, are conclusory and fail to raise the specter of relief beyond the speculative level. *See Mann v. Daniels*, No. 10-CV-7540(PKC)(THK), 2011 WL 2421285, at *2 (S.D.N.Y. June 9, 2011) (holding that the plaintiff did not plausibly allege that the defendants were personally involved because the complaint did not include facts about any "specific wrongdoing sufficient to constitute personal involvement").

In sum, the Complaint contains no particularized allegations that Defendants Abreu, Beato, Vitelli, or Lawrence caused the Plaintiffs to suffer any constitutional deprivations or otherwise caused injury to the Plaintiffs. Without a "tangible connection" between these defendants and injuries suffered by Plaintiffs, *Bass*, 790 F.2d at 263, any claims against them are "fatally defective on [their] face," *Alfaro Motors, Inc.*, 814 F.2d at 886. Accordingly, all claims against Defendants Abreu, Beato, Vitelli, and Lawrence are dismissed for lack of personal involvement without prejudice.

---

[1] Plaintiffs' assertion that Defendants Abreu and Vitelli have had other civilian complaints filed against them for "illegally arresting citizens and illegally strip and body cavity searching them" also fails to allege personal involvement. (Compl. ¶ 50.) Whatever the merit of these accusations against Abreu and Vitelli, they do not demonstrate "a tangible connection between the acts of [the] Defendant[s] and the injuries suffered" in this matter. *See Bass*, 790 F.2d at 263.

## II.    Unlawful Search

Defendants argue that Plaintiffs Anderson, H. Bradshaw, O. Bradshaw, Bailey, Rose, Jones and Reynolds' claims for unlawful strip searches should be dismissed for relying upon impermissible group pleading. In contrast to Plaintiffs Dean, Harley, Long and Rosa, all of whom name the specific Defendant who conducted their strip search (Compl. ¶¶ 42-44, 46), Plaintiffs Anderson, H. Bradshaw, O. Bradshaw, Bailey, Rose, Jones, and Reynolds only allege that they were strip-searched by one of Defendant Officers, or an unidentified MVPD Officer (Compl. ¶¶ 39, 45, 47).

As explained in Section I, *supra*, Plaintiffs cannot simply "lump [] all the [D]efendants together…and provide no factual basis to distinguish their conduct." *Atuahene v. City of Hartford*, 10 F. App'x. 33, 34 (2d Cir. 2001). Rather, they "must allege which individuals violated [their] rights and how each person did so, and may not 'rely on a group pleading against all defendants without making specific individual factual allegations.'" *Pierre v. Yurchenko*, No. 22 CV 1171 (NRM)(LB), 2024 WL 1528551, at *5 (E.D.N.Y. Feb. 20, 2024), *report and recommendation adopted*, No. 22-CV-1171-NRM-LB, 2024 WL 1327343 (E.D.N.Y. Mar. 28, 2024) (citation omitted). Plaintiffs' citation to exceptional cases where group pleading was permitted does not change this. (*See* Pltfs.' Opp. at 21.) The cases which Plaintiffs rely upon concern situations where a plaintiff was unable, at the pleading stage, to identify which particular defendant harmed him (typically because he was attacked in a group) and therefore brought identical claims against multiple defendants. *See, e.g., Messina v. Mazzeo*, 854 F. Supp. 116, 126 (E.D.N.Y. 1994); *Lapoint v. Vasiloff*, No. 515CV185MADATB, 2017 WL 976947, at *5 (N.D.N.Y. Mar. 13, 2017). Such cases do not run afoul of Rule 8(a)'s requirement to give a defendant fair notice of the claims against him, *Farmer v. Cnty. of Westchester*, No. 18-CV-2691 (NSR), 2021 WL 4199944, at *6

7

(S.D.N.Y. Sept. 15, 2021), because, "given the specific circumstances of the case and drawing all reasonable inferences in the plaintiff's favor, there was an understandable explanation for why the [c]omplaint was not more particularized," *Arias v. East Hartford*, No. 3:20-CV-00895 (JCH), 2021 WL 3268846, at *4 (D. Conn. July 30, 2021).[2]

Here, however, Plaintiffs allege that after they were brought back to police headquarters, they were strip searched in *separate* cells or rooms by one or two particulars officer(s). (*See* Compl. ¶¶ 39, 42-44, 46.) Plaintiffs should therefore have no difficulty identifying which particular defendant(s) harmed him or her by conducting an unlawful search. Based on the specific circumstances of this case, it would not "be asking too much for an arrestee to remember and plead the role each of several police officer played in [this] alleged instance of police [misconduct]." *See Messina*, 854 F.Supp. at 126. Merely asserting that these seven Plaintiffs "were also arrested, strip searched and/or body cavity searched…in a similar manner" to the other Plaintiffs (Compl. ¶ 47), "fail[s] to differentiate as to which [D]efendant was involved in the alleged unlawful conduct" and is therefore "insufficient to state a claim." *Breton v. City of New York*, 404 F. Supp. 3d 799, 812 (S.D.N.Y. 2019) (quoting *Leneau v. Ponte*, 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018)), *appeal dismissed* (July 16, 2018). Accordingly, Plaintiffs Anderson, H. Bradshaw, O. Bradshaw, Bailey and Rose, Jones, and Reynolds' claims for unlawful strip searches are dismissed without prejudice.

---

[2] "Nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." *Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*, No. 13CV7639-LTS-MHD, 2015 WL 4040882, at *4 (S.D.N.Y. July 2, 2015) (declining to dismiss complaint alleging "joint activity amongst the [m]oving [d]efendants"); *see also New York Am. Water Co., Inc. v. Dow Chemical Co.*, No. 19-CV-2150, No. 19-CV-5632, 2020 WL 9427226, at *4 (E.D.N.Y. Dec. 11, 2020) (noting that the pleading did group defendants together, but allowing it to proceed because "plaintiffs make clear that identical claims are [being] asserted against each defendant").

### III.    False Arrest

Defendants ask the Court to dismiss Plaintiffs Rose, Anderson, and O. Bradshaw's Section 1983 false arrest claims because they later pled guilty to charges associated with their underlying arrests. (Defs.' MoL at 19-20.) In their opposition papers, "Plaintiffs Rose, Anderson, and O. Bradshaw agree to the dismissal of their false arrest…claims due to their guilty pleas." (Pltfs.' Opp. at 24 n.5.) Accordingly, absent a dispute between the parties on this issue, the false arrest claims brought by Plaintiffs Rose, Anderson, and O. Bradshaw are dismissed with prejudice.

### IV.    Malicious Prosecution

Plaintiffs assert a Section 1983 claim for malicious criminal prosecution against Defendants. (*See* Compl. ¶¶ 98-102.) Section 1983 provides a claim for malicious prosecution, the elements of which are borrowed from state law. *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). Under New York law, to state a malicious prosecution claim, a plaintiff must plausibly allege "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010). Furthermore, because a malicious prosecution claim under Section 1983 is grounded in the Fourth Amendment, a plaintiff must also establish another element in addition to the state tort requirements: "a sufficient post-arraignment liberty restraint to implicate the plaintiffs' Fourth Amendment rights." *Rohman v. New York City Transit Auth.,* 215 F.3d 208, 215 (2d Cir. 2000); *accord Lanning v. City of Glens Falls*, 908 F.3d 19, 24 (2d Cir. 2018), *abrogated on other grounds by Thompson v. Clark*, 596 U.S. 36 (2022); *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003). A seizure triggering the protection of the Fourth Amendment occurs once an officer has 'by means of physical force or show of authority,…in some way restrained the liberty

of a citizen.'" *United States v. Freeman*, 735 F.3d 92, 96 (2d Cir. 2013) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 (1968)).

Here, Plaintiffs cannot demonstrate that they suffered a post-arraignment liberty restraint in violation of their Fourth Amendment rights and this problem is fatal to their claims for malicious prosecution. Following their arrests, Plaintiffs only allege that they were "improperly subjected to judicial proceedings," that "terminated in Plaintiffs [sic] favor" (Compl. ¶ 99) and that some, but not all, of the Plaintiffs were issued a desk appearance ticket ("DAT") (*id.* ¶¶ 45-46). Plaintiffs offer no explanation on what improper judicial proceedings they were allegedly subject to, and without this elaboration, the Court is unable to determine whether Plaintiffs suffered the necessary *post*-arraignment liberty restraint to assert a Section 1983 claim for malicious prosecution. In fact, Plaintiffs do not allege that they were "ever arraigned, required to post bail, or subjected to court-ordered travel restrictions." *See Johnson v. City of Newburgh*, No. 22 CV 4450 (VB), 2023 WL 5585139, at *7 (S.D.N.Y. Aug. 29, 2023), *reargument denied sub nom. Johnson v. Geraci*, No. 22 CV 4450 (VB), 2023 WL 5836683 (S.D.N.Y. Sept. 8, 2023). Aside from the conclusory allegation that they were "improperly subjected to judicial proceedings" (Compl. ¶ 99), Plaintiffs "make[] no allegations of any further restrictions or deprivations of [their] liberty," and therefore have "failed to plausibly allege a malicious prosecution claim," *Orakwue v. City of New York*, No. 11-CV-6183 RRM VMS, 2013 WL 5407211, at *11–12 (E.D.N.Y. Sept. 25, 2013).

The issuance of DATs to some of the Plaintiffs does not cure this deficiency. (*See* Compl. ¶¶ 45-46.) This Court has previously held that "a charge and a warrantless arrest—concluding with the issuance of the desk appearance ticket…do not amount to a prosecution and cannot alone support a claim for malicious prosecution." *Katzev v. Newman*, No. 96 CIV 9138 (BSJ), 2000 WL 23229, at *4 (S.D.N.Y. Jan. 12, 2000); *see also Swartz v. Insogna,* 704 F.3d 105, 111–112 (2d Cir.

2013) (holding that "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure."); *Mesa v. City of New York,* No. 09–cv–10464, 2013 WL 31002, at *17 (S.D.N.Y. Jan. 3, 2013) ("[plaintiff's] malicious prosecution claims also fail because a warrantless summons, demanding only a court appearance, cannot provide the basis for a malicious prosecution claim, under either § 1983 or state law.") In addition, "[e]ven if the Court were to assume the issuance of a DAT 'represents the sort of legal process required for a malicious-prosecution claim' and 'even assuming that the unexplained decision to drop charges prior to arraignment constitutes favorable termination,'" Plaintiffs still fail to allege a post-arraignment liberty restraint. *See Johnson*, 2023 WL 5585139, at *7 (quoting *Olaizola v. Foley*, 2019 WL 428832, at *6 (S.D.N.Y. Feb. 4, 2019), *aff'd*, 797 F. App'x 623 (2d Cir. 2020)).

In sum, "[g]iven the paucity of allegations," in the Complaint regarding a post-arraignment liberty restraint, Plaintiffs have failed to allege "sufficient facts to establish that [they] w[ere] seized under the Fourth Amendment for malicious prosecution purposes*." See Mazzone v. Town of Southampton*, 283 F. Supp. 3d 38, 54 (E.D.N.Y. 2017). As a result, their malicious prosecution claims are dismissed without prejudice, except for Plaintiffs Rose, Anderson, and O. Bradshaw, who "agree to the dismissal of their…malicious prosecution claims." (*See* Pltfs.' Opp. at 24 n.5.). Plaintiffs Rose, Anderson, and O. Bradshaw's malicious prosecution claims are dismissed with prejudice.

## V.   Failure to Intervene

Plaintiffs assert a Section 1983 claim for failure to intervene to prevent other Defendant Officers from violating Plaintiffs' constitutional rights. (*See* Compl. ¶¶ 103-108.) "[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of

citizens from infringement by other law enforcement officers in their presence." *Muniz v. Orange Cnty.,* No. 22 CV 529 (NSR), 2024 WL 1142550, at *7 (S.D.N.Y. Mar. 14, 2024) (quoting *Sanabria v. Detective Shawn Tezlof*, No. 11-CV-6578 (NSR), 2016 WL 4371750, at *5 (S.D.N.Y. Aug. 12, 2016)). As a result, "[a]n officer who fails to intercede in the use of excessive force or another constitutional violation is liable for the preventable harm caused by the actions of other officers." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).

Plaintiffs' failure to intervene claim is pled in a vague and conclusory fashion. Plaintiffs merely allege that "one or more of the Defendant Officers stood by without intervening to prevent the violation of Plaintiffs' constitutional rights," without specifying which Defendants failed to intervene, the opportunity they had to intervene, or what constitutional rights were violated. (*See* Compl. ¶ 104.) "It is unclear which [D]efendants [P]laintiff[s] [are] referring to," because they "only refer[] to the [D]efendants in the collective, never identifying which [D]efendants were responsible for specific actions." *Bouche v. City of Mount Vernon*, No. 11 CIV. 5246 SAS, 2012 WL 987592, at *7 (S.D.N.Y. Mar. 23, 2012) (dismissing failure to intervene claim where "plaintiff failed to state who or how defendants failed to intervene"). The Complaint impermissibly "lumps all Defendant Officers together without articulating specifics about any one [D]efendant…as if to make Defendants guess who was where was where at what point in time to intervene." *Roman v. City of Mount Vernon*, No. 21-CV-2214 (KMK), 2022 WL 2819459, at *15 (S.D.N.Y. July 19, 2022). In other words, Plaintiff's allegations fail to dictate "which…Defendant failed to intervene to prevent such violations from occurring." *Clay v. County of Clinton*, No. 10-CV-239, 2012 WL 4485952, at *14 (N.D.N.Y. Sept. 27, 2012) (granting motion for judgment on the pleadings as to the plaintiff's failure to intervene claim, because the plaintiff "fail[ed] to distinguish which…

[d]efendant was responsible for actually violating [the] [p]laintiff's constitutional rights and which, if any, [d]efendant failed to intervene to prevent such violations from occurring"); *see also DiPippo v. County of Putnam*, No. 17-CV-7948, 2019 WL 1004152, at *15–16 (S.D.N.Y. Feb. 28, 2019) (granting a motion to dismiss with respect to a failure to intervene claim because "[p]laintiff's failure to intervene claim against all [the] [d]efendants is insufficiently pleaded" insofar as it lacks any detail as to who could have intervened, when, and how). Moreover, Plaintiffs were strip searched in separate rooms by separate Defendants, but Plaintiff's allegations do not explain which Defendant(s) in which room(s) could have intervened to prevent the searches. As Defendants argue, these allegations "state a claim that a particular officer or officers conducted unlawful searches, but do not create a plausible inference that other officers were in a position to intervene." (Defs.' MoL at 6.)

"[G]iven [their] conclusory and one-size-fits-all allegations, Plaintiff[s] fail[] to plausibly allege a failure to intervene claim," and the claim is dismissed without prejudice as a result. *Roman*, 2022 WL 2819459, at *15.

## VI.   *Monell* Claim

To bring a *Monell* claim against a municipality, a plaintiff must "prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer." *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (citation omitted), *cert. denied*, 480 U.S. 916 (1987).  A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or

supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted). Plaintiffs assert three of the four categories of an official policy or custom *Monell* against the City. Specifically, Plaintiffs allege that: (1) the City official government policymakers had actual knowledge of or actually committed the constitutional violations of which Plaintiffs complain and did nothing (Compl. ¶¶ 117); (2) the Defendant Officers engaged in unconstitutional conduct (i.e. conducting unlawful arrests and strip searches) that amounted to a custom or usage of the City (*id.* ¶¶ 113-114); and (3) the City's leaders and policymakers caused Plaintiffs' injuries by failing to train and supervise their respective employees, as well as "to promulgate proper or adequate rules, regulations, policies and procedures" regarding strip/body cavity searches (*id.* ¶ 115). Plaintiffs do not assert a *Monell* claim based on the existence of a formal policy. (*See* Pltfs.' Opp. at 16 n. 2.) The Court analyzes each type of *Monell* claim asserted in turn.

a. <u>Final Policymaker</u>

Plaintiffs allege that the City's policymakers with respect to MVPD officers making arrests and conducting searches are the Commissioner of Public Safety and/or the MVPD Chief of Police. (Compl. ¶70.) These policymakers were allegedly on notice of Defendant Officers' unlawful arrests and unreasonable searches, failed to act in light of their knowledge, and therefore were deliberately indifferent. (*Id.* ¶¶ 70-73 & 82.) "Alleging a pervasive practice amongst lower-level municipal employees alone is insufficient to state a *Monell* claim under § 1983." *Gerte v. Borough of Naugatuck,* No. 3:19CV1511 (JBA), 2021 WL 1165362, at *7 (D. Conn. Mar. 26, 2021) (citing *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004)). A plaintiff alleging violations by municipal agents without final policymaking authority must either allege "that a policymaker ordered or ratified the subordinates' actions" or that "the policymaker was aware of

14

a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the action." *Amnesty America*, 361 F.3d at 126. In other words, "where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction may constitute a 'deliberate choice,' that acquiescence may 'be properly thought of as a city policy or custom that is actionable under § 1983." *Id.* (citation omitted).

Here, Plaintiffs fail to properly allege that Commissioner of Public Safety and/or the MVPD Chief of Police were indeed final policymakers for the Defendant City. Plaintiffs do not point to any support for their position, which they must do to sufficiently allege that either figure "was a final policymaker with respect to the particular conduct challenged in this lawsuit." *See Taranto v. Putnam Cnty.*, No. 21-CV-2455 (KMK), 2023 WL 6318280, at *21 (S.D.N.Y. Sept. 28, 2023). Plaintiffs do "not direct the Court to New York State law, municipal charters, or any other source that could support [their] claim," and instead make only "minimal, conclusory statements," which "fall far short of satisfying Plaintiff[s'] burden to allege facts creating a plausible inference that either of these [individuals] were final policymakers." *See Coppola v. Town of Plattekill*, No. 17-CV-1032, 2018 WL 1441306, at *10 (N.D.N.Y. Mar. 22, 2018); *see also W.A. v. Hendrick Hudson Cent. Sch. Dist.*, No. 14-CV-8093, 2016 WL 1274587, at *12–13 (S.D.N.Y. Mar. 31, 2016) (dismissing a *Monell* claim where the plaintiffs "allege[d] that 'Coughlin, as an administrator for the District, possesses policy making authority,'" but "cite[d] no state or county law that actually vests Coughlin with final policymaking authority over the maintenance and protection of student records"); *Canner v. City of Long Beach*, No. 12-CV-2611, 2015 WL 4926014, at *6 (E.D.N.Y. Aug. 18, 2015) (noting a prior order where the court dismissed the plaintiffs' *Monell* claim where the "plaintiffs did not reference any state law supporting their claim that [an official] was a final policymaker"). In fact, the Complaint "contains no explicit

reference to...the extent of their authority, or about whether one or more individuals exercised their final policymaking authority in causing Plaintiff[s'] injuries." *See Clarke v. Antonini*, No. 21 CIV. 1877 (NSR), 2022 WL 4387357, at *7 (S.D.N.Y. Sept. 22, 2022). This omission is fatal to Plaintiffs' claim for *Monell* liability premised on the purported act of a final policymaker, and the claim is dismissed without prejudice as a result.

    b.  Widespread Practice

Plaintiffs allege that the Defendant City had notice of a widespread practice by their officers and agents of "illegally and intrusively searching individuals without cause, using excessive force against individuals, manufacturing false evidence, suppressing exculpatory evidence, and instigating false criminal charges, including the falsification of statements and reports, fabricating false evidence to implicate defendants in criminal conduct, and pursuing wrongful convictions through profoundly flawed investigations." (Compl. ¶ 112.) In support of this theory of liability, Plaintiffs cite the following evidence: (1) that "numerous civil rights lawsuits have alleged illegal strip and body cavity searches by MVPD Officers, including Defendant Officers" (*id.* ¶ 58), (2) that Defendant City has "received numerous complaints by civilians about illegal strip and/or body cavity searches through formal and informal channels, as well as complaints about MVPD officers illegally detaining and arresting individuals" (*id.* ¶ 62), (3) that the Westchester County District Attorney ("WCDA") has asked the U.S. Department of Justice ("DOJ") to investigate the MVPD's "pervasive and persistent alleged civil rights violations including unlawful strip searches, excessive use of force, and other misconduct" and the DOJ announced in response that it was conducting a pattern and practice investigation into "MVPD's use of force, strip and body cavity searches, and how it handles evidence" (*id.* ¶¶ 9-10), and (4)

that the WCDA's Office sought to vacate convictions made during "Operation Crackdown" (*id.* ¶ 61). The Court will review each of these types of evidence in turn.

*First*, this Court has consistently found that "citations to lawsuits, even if they did involve comparable conduct, do not alone establish a custom or practice that is widespread and persistent, *particularly if the lawsuits did not result in an adjudication of liability.*" *Roman*, 2022 WL 2819459, at *20 (citation omitted) (emphasis in original); *see also Bethune v. Westchester County*, No. 18-CV-3500, 2020 WL 1032508, at *5 (S.D.N.Y. Mar. 2, 2020) (granting a motion to dismiss where the plaintiff premised *Monell* liability on, *inter alia*, citations to several filed lawsuits); *Falls v. Campbell*, 2019 WL 1255768, at *6 (S.D.N.Y. 2019) (collecting cases) ("To the extent the complaints…were found to be unsubstantiated or were settled without an admission of liability by the [municipality], those complaints do not provide a valid basis for concluding that the [municipality] was deliberately indifferent to [defendants'] use of excessive force, because they do not, by themselves, establish that [they] used excessive force in the first place.") (citation omitted); *Tieman v. City of Newburgh*, 2015 WL 1379652, at *17 (S.D.N.Y. 2015) ("Simply put, the fact that there were allegations of thirteen instances of excessive force during arrests over four years (none of which involved findings or admissions of culpability) during which hundreds, if not thousands, of arrests were made does not plausibly demonstrate that the use of excessive force during arrest was so frequent and pervasive to constitute a custom."); *Calderon v. City of New York*, 138 F. Supp. 3d 593, 613 (S.D.N.Y. 2015) (holding the existence of 16 prior lawsuits insufficient to show a municipal custom where "[n]one of the lawsuits cited resulted in an adjudication or admission of liability and the number of suits does not suggest a pervasive illegal practice.").

Here, Plaintiffs rely entirely on lawsuits which failed to result in a finding of *Monell* liability against the City, settled, or are currently pending.[3] (*See* Compl. ¶¶ 58, 60.) Plaintiffs are "misguided to rely on…cases in which no liability has been determined as evidence of wrongful practice." *Roman*, 2022 WL 2819459, at *20. To sustain *a Monell* claim based on a widespread practice, a municipality's policy or custom "need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996). The practice must, however, "be so manifest as to imply the constructive acquiescence of senior policy-making officials." *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992). The absence of a single lawsuit finding the City definitively liable hardly suggests the "manifest… acquiescence of senior policy-making officials" and therefore "does not strike th[e] Court as enough to plausibly allege an obvious need to act on the part of [the municipality]." *Bethune*, 2020 WL 1032508, at *5.

*Second*, the allegation that Defendant City has received numerous civilian complaints about illegal strip and/or body cavity searches and MVPD officers illegally detaining and arresting individuals fares no better in demonstrating the existence of a widespread practice. (*See* Compl. ¶ 62.) "Plaintiff does not articulate the length of time over which these complaints are to have been made, a relevant consideration." *Roman*, 2022 WL 2819459, at *21 (citing *Lopez v. City of New York*, No. 20-CV-2502, 2022 WL 2078194, at *6 (S.D.N.Y. June 9, 2022) ("In considering whether a plaintiff has pleaded facts in support of her *Monell* claim sufficient to defeat a motion to dismiss, a court may also consider the time span of the actions alleged.")). In fact, Plaintiffs fail to provide any factual basis or specificity regarding the civilian complaints, and instead provide only a link to a news article (*see* Compl. at 16 n.5), which is "too vague and lack[s] sufficient

---

[3] Plaintiffs cite to *Rutherford, et al. v. City of Mount Vernon, et al.*, No. 7:18-cv-10706-AEK, 2023 WL 6395375 (S.D.N.Y. Sept. 29, 2023), which is currently scheduled for trial on *Monell* claims against the City based on an alleged widespread practice of unlawful strip searches and a failure to train. As with the other cases Plaintiffs cite, no conclusive finding of liability against the City has yet been made.

factual content for Plaintiff[s] to plausibly plead that the [City] had a widespread practice or custom that constitutes an official policy", *Clarke*, 2022 WL 4387357, at *9. Moreover, "[t]here is no specificity whatsoever as to how many complaints were made or to whom....There is also no discussion as to whether the complaints were investigated or if [the City] 'failed to make any meaningful investigation into charges that police officers had [acted] in violation of the complainants' civil rights.'" *Id.* (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)). "As relevant here, it is well settled that when 'a complaint, whether administrative or by way of a civil action, is filed against an officer, it does not follow ipso facto that he is guilty of a constitutional violation'." *Seward v. Antonini*, No. 20-CV-9251 (KMK), 2023 WL 6387180, at *24 (S.D.N.Y. Sept. 29, 2023) (quoting *Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 409 (E.D.N.Y. 2011)). Accordingly, the civilian complaints to which Plaintiffs cite do not support the existence of a widespread practice "so permanent and well-settled that it may be deemed a 'custom' of the [City]." *See Davis v. City of New York*, 228 F. Supp. 2d 327, 344 (S.D.N.Y. 2002), *aff'd,* 75 F. App'x 827 (2d Cir. 2003).

*Third*, Plaintiffs contend that the WCDA's request for an investigation into MVPD, as well as the DOJ's responding pattern and practice investigation, support the existence of a widespread practice. (Compl. ¶¶ 9-10.) This, too, fails to satisfy Plaintiffs' burden. "For the same reasons unsupported legal filings do not support a *Monell* claim, neither does the [WCDA's] request for an investigation nor DOJ's response thereto, as neither substantiates wrongdoing of some kind." *Roman*, 2022 WL 2819459, at *22. Plaintiffs do not include in the Complaint the results of the DOJ's investigation, and do not in their opposition papers cite to, any findings of liability by the DOJ. Without this, the mere existence of the investigation cannot support a widespread practice. *See Joseph v. Doe*, No. 16-CV-2004, 2017 WL 4233024, at *6 (E.D.N.Y. Sept. 22, 2017). *Cf.*

*Shepherd v. Powers*, No. 11-CV-6860, 2012 WL 4477241, at *10 (S.D.N.Y. Sept. 27, 2012) (relying on a DOJ investigation in a motion to dismiss a *Monell* claim where the investigative findings were made in a publicly filed report and subsequently debated by the municipality).

*Fourth*, Plaintiffs cite to May 10, 2023 statement issued by the WCDA's office that "it will be seeking to vacate and dismiss at least twenty-seven criminal charges due to its findings" of "discrepancies, inconsistencies and contradictions in the undercover and MVPD reports detailing purported drug sales that were a part of" a 2017 operation known as "Operation Crackdown." (*See* Compl. ¶ 61.) The Court agrees with Defendants that the WCDA's "press release has no impact on the present case because none of the arrests here are alleged to have been for narcotics violations, and none involved the 2017 narcotics operation that was the subject of the press release." (Defs.' MoL at 15.) Plaintiffs do not allege that Operation Crackdown concerned unlawful strip searches, and the Operation is therefore irrelevant to the MVPD's purported widespread practice of unlawful searches. In addition, the overturning of narcotics-related arrests associated with Operation Crackdown does nothing to demonstrate the existence of a widespread practice of unlawful arrests or false charges in all types of cases.

In sum, each of the ways in which Plaintiffs attempt to establish a widespread practice "fall[s] short in light of a lack of genuine findings of wrongdoing and a lack of detailed factual assertions. Plaintiff[s] therefore cannot sustain a *Monell* claim under a theory of widespread custom or practice," *Roman*, 2022 WL 2819459, at *22, and this claim is dismissed without prejudice.

c.  Failure to Train

Plaintiffs additionally allege liability under a failure to train, supervise, and promulgate rules theory. (*See* Compl. ¶ 115.) "A policy, custom, or practice may also be inferred where 'the

municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). In *Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992), the Second Circuit identified three requirements that must be satisfied before a municipality's failure to train or supervise constitutes deliberate indifference:

> First, the plaintiff must show that a policymaker knows "to a moral certainty" that her employees will confront a given situation…Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation…Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.

*Id.* at 297-98 (citations omitted); *accord Roches-Bowman v. City of Mount Vernon*, No. 21-cv-5572 (KMK), 2022 WL 3648394, at *9-10 (S.D.N.Y. Aug. 24, 2022). "There is 'a heavy burden of proof' to show that the municipality's 'response was so patently inadequate to the task as to amount to deliberate indifference.'" *Floyd v. City of New York*, 813 F. Supp. 2d 417, 441 (S.D.N.Y. 2011) (quoting *Reynolds v. Giuliani*, 506 F. 3d 183, 192-93 (2d Cir. 2007)). "[A]n allegation of numerous claims of [the underlying constitutional wrong] by itself is insufficient to raise an inference of deliberate indifference due to failure to supervise." *Tieman*, 2015 WL 1379652, at *21. Rather, a plaintiff must allege that "meaningful attempts to investigate repeated claims of excessive force are absent." *Id.* (quoting *Hart v. City of Binghamton*, No. 10-CV-1064, 2012 WL 1565085, at *5 (N.D.N.Y. May 2, 2012)).

In sum, "[f]or deliberate indifference to be shown, the response must amount to a persistent failure to investigate the complaints or discipline those whose conduct prompted the complaints." *Hart*, 2012 WL 1565085, at *5. Plaintiffs, however, do not make any such allegation. In fact, Plaintiffs assert the very opposite – namely, that the MVPD investigated an allegation of an unlawful strip search involving two of the named Defendant Officers. (*See* Compl. ¶ 75.) And as

was the case with Plaintiffs' widespread practice theory, mere allegations of misconduct cannot demonstrate deliberate indifference. *See, e.g. Alwan*, 311 F. Supp. 3d at 584 (dismissing failure to supervise or discipline claim where plaintiff "ha[d] not identified any complaints to which the City simply failed to respond"); *Aguirre v. City of New York*, 15-CV-6043 (PKC), 2017 WL 4236552, at *7 (E.D.N.Y. Sept. 22, 2017) (dismissing failure to supervise or discipline claim where, *inter alia*, the complaint "d[id] not allege any [specific] facts regarding the number of filed complaints that the…Commissioner ignored"); *Walker v. City of New York*, No. 14-CV-808(ER), 2015 WL 4254026, at *11 (S.D.N.Y. July 14, 2015) (finding that complaints did not demonstrate failure to supervise or discipline because "Plaintiff d[id] not allege any specific facts as to the contents of the complaints, how many were filed, and when they were filed"). Plaintiffs also offers only a conclusory, boilerplate allegation that the Defendant City knew of these purportedly unlawful searches, and yet "took no action to train, supervise, or discipline the MVPD officers who committed these knowingly illegal searches." (*See* Compl. ¶ 71.) Such vague allegations, without anything to support them, do not suffice, even at the motion to dismiss stage. *See Triano*, 895 F. Supp. 2d at 539–41 (dismissing *Monell* claim where the plaintiff "merely alleged that the [t]own failed to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program").

Plaintiffs likewise fail to identify a "specific deficiency in the municipality's training." *Tieman*, 2015 WL 1379652, at *22. *Cf. Buari v. City of New York*, 530 F. Supp. 3d 356, 403 (S.D.N.Y. 2021) ("Buari has alleged specific deficiencies in the NYPD's training program: the failure to train officers not to initiate arrests and prosecutions without probable cause, not to coerce witnesses to testify falsely, to correct false testimony, and to disclose *Brady* material," and therefore "plausibly state[d] a claim" for failure to train); *Felix*, 344 F. Supp. 3d at 661 (denying

motion to dismiss where plaintiff alleged that NYPD failed to incorporate crisis intervention in its training). And "[w]hile it may be true that § 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery…this does not relieve them of their obligation under *Iqbal* to plead a facially plausible claim." *Simms*, 2011 WL 4543051, at *2, *aff'd*, 480 F. App'x at 631 n.4 (2d Cir. 2012); *see also Pettiford v. City of Yonkers*, No. 14-CV-6271, 2021 WL 2556172, at *8–9 (S.D.N.Y. June 21, 2021) (dismissing *Monell* claim on failure to train theory where the plaintiff failed to identify specific training failures). "In order to meet a complainant's Rule 8 obligations under *Iqbal*, a pleading must specifically identify the type of training the government employees lacked and include 'enough factual material…for the court to reasonably infer that the police misconduct' was not the result of 'the individual acts of the arresting officers.'" *Roman*, 2022 WL 2819459, at *23 (citation omitted). Plaintiffs have not included enough such factual material here.

"Absent allegations that demonstrate specific indifference or that demonstrate with any degree of specificity the sort of training Mount Vernon should have but failed to conduct, Plaintiff[s] ha[ve] not met [their] burden under *Monell*." *Id.* Accordingly, Plaintiffs' *Monell* claim for failure to train is dismissed without prejudice.

**VII.   Supervisory Liability**

Plaintiffs assert a Section 1983 claim for supervisory liability, alleging that "Defendant Antonini, and other unidentified supervisory MVPD employees and officers personally caused Plaintiffs' constitutional injuries by being deliberately or consciously indifferent to the rights of others in failing to properly supervise and train their subordinate employees." (Compl. ¶ 121.) This claim fails because "there is no special rule for supervisory liability. Instead,…[any] violation must be established against the supervisory official directly." *Tangreti*, 983 F.3d at 618. Accordingly,

Plaintiffs must establish that Defendant Antonini violated Plaintiffs' constitutional rights through his "own conduct, not by reason of [his] supervision of others who committed the violation" because there is no "separate test of liability specific to supervisors." *Id.* at 619.

The only allegations against Defendant Antonini are regarding his unlawful searches of certain Plaintiffs. (*See* Compl. ¶¶ 42-43, 46.) As a result, any "supervisory" claim additionally fails on the ground that such a claim would be duplicative of Plaintiffs' direct claims against Defendant Antonini. "[P]laintiff[s] cannot press both direct and supervisory claims against a single defendant, with both claims premised 'on the same conduct.'" *See Martinez v. City of New York*, 564 F. Supp. 3d 88, 105 (E.D.N.Y. 2021) (citation omitted); *see also Burch v. City of New York*, No. 11-CV-2841 (CBA) (VMS), 2016 WL 11430773, at *16 (E.D.N.Y. Apr. 22, 2016) ("To the extent [plaintiff's] supervisory claim is premised on [a defendant's] participation in the alleged constitutional[ ] violation…it is duplicative" of the underlying claim). Here, "[a] separate claim against [Antonini] for supervisory liability 'is clearly duplicative….when the direct claim of [unlawful search] is proceeding against him for that action.'" *See Pateman v. City of White Plains*, No. 17-CV-6156 (KMK), 2020 WL 1497054, at *23 (S.D.N.Y. Mar. 25, 2020) (quoting *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 394 (S.D.N.Y. 2013)). As a result, Plaintiffs' claim for supervisory liability is dismissed without prejudice.

## VIII.   State Law Claims

Finally, Plaintiffs assert a number of state law claims against Defendants. (*See* Compl. ¶¶ 129-140.) Defendants argue that these state law claims should be dismissed as procedurally deficient. (*See* Defs.' MoL at 5-8.) The Court agrees.

*First*, Plaintiffs Anderson, Bailey, and Reynolds' state law claims must be dismissed for failure to file a notice of claim. New York law "provides that no tort action shall be prosecuted

or maintained against a municipality or any of its officers, agents, or employees unless: (1) a notice of claim has been served against the [municipality]; (2) the [municipality] has refused adjustment or payment of the claim; and (3) the action is commenced within one year and ninety days after the event upon which the claim is based occurred." *Gibson v. Comm'r of Mental Health*, No. 04–CV–4350, 2006 WL 1234971, at *5 (S.D.N.Y. May 8, 2006) (citing N.Y. Gen. Mun. Law § 50–i). A plaintiff is required to serve a notice of claim "within ninety days after the claim arises." N.Y. Gen. Mun. Law § 50–e(1)(a). Notice of claim requirements are construed strictly by New York state courts and "[f]ailure to comply with [them] ordinarily requires dismissal." *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999). In addition, "[i]t is well settled that federal courts entertaining state law claims against municipalities are obligated to apply any applicable state law notice-of-claim provisions." *Jones v. City of New York*, No. 1:19-CV-10424 (MKV), 2021 WL 4482150, at *5 (S.D.N.Y. Sept. 30, 2021) (citation omitted). Here, Plaintiffs Anderson, Bailey, and Reynolds concede that they never filed notices of claim and therefore "agree to the dismissal of their state law claims." (Pltfs.' Opp. at 17 n.4.) All state law claims asserted on behalf of these Plaintiffs are therefore dismissed with prejudice.

In addition, Plaintiffs assert that H. Bradshaw served a notice of claim on the City. (Pltfs.' Opp. at 17.) Defendant City, however, has no record of having received this notice, and Plaintiffs did not, in their opposition papers, submit a copy of the notice stamped "received" by the City. (*See* Defs.' Reply at 1.) As explained earlier, "New York state courts strictly construe Notice of Claim requirements, which federal courts must apply in exercising supplemental jurisdiction over state law claims." *Matthews v. City of New York*, 889 F. Supp. 2d 418, 448 (E.D.N.Y. 2012) (internal citation omitted). Accordingly, "[e]ven where there is substantial compliance with the notice provision, the complaint will be dismissed if the plaintiff has not

notified the proper official." *Kaselaan & D'Angelo Assocs., Inc. v. City of New York*, No. 98 CIV. 7497 (DLC), 1999 WL 1067858, at \*2 (S.D.N.Y. Nov. 23, 1999). In light of the strict manner in which notice of claim provisions are construed, the Court finds that Plaintiff H. Bradshaw failed to timely serve a notice of claim on the City, and as a result, his state law claims are dismissed with prejudice. *See Excell v. City of New York*, No. 12 Civ. 2874, 2012 WL 2675013, at \*4 (E.D.N.Y. July 5, 2012) ("because timely service of a Notice of Claim is 'a condition precedent to commencement of a tort action against [a City] or its employees,…failure to do so is grounds for dismissal.'") (citation omitted).

*Second*, the state-law claims brought by Plaintiffs Dean, O. Bradshaw, Rosa, Rose, Jones, Long, and Harley must be dismissed for failure to comply with the City's demands under N.Y. Gen. Mun. Law §50-h. In relevant part, Section 50-h(1) provides that "[w]herever a notice of claim is filed against a city,...the city...shall have the right to demand an examination of the claimant relative to the occurrence and extent of the injuries or damages for which claim is made." N.Y. Gen. Municipal Law § 50-h(1). Going further, Section 50-h(5) provides that "[w]here a demand for examination has been served[,]...no action shall be commenced against the city...against which the claim is made unless the claimant has duly complied with such demand for examination." N.Y. Gen. Municipal Law § 50-h(5).

On September 25, 2020, the City of Mount Vernon served notices of examination on Dean, O. Bradshaw, Rosa, Rose, Jones, Long and Harley pursuant to N.Y. Gen. Mun. Law §50-h.[4] (*See* ECF No. 36-2.) After these notices were served, Plaintiffs' counsel requested an

---

[4] Plaintiffs' argument that the Court cannot consider the exhibits attached to Defs.' MoL in deciding the Motion because they were not attached to or incorporated by reference in the Complaint is unavailing. (*See* Pltfs.' Opp. at 17-18.) "It is well established that when the question is subject matter jurisdiction, the court is permitted to rely on information beyond the face of the complaint." *In re Petition of Germain*, 824 F.3d 258, 261 (2d Cir. 2016) (quoting *St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005)); *see also Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) ("[W]hen, as here, subject matter jurisdiction is challenged under Rule 12(b)(1), evidentiary matter may be presented by affidavit or otherwise.").

adjournment of the examinations of Dean, O. Bradshaw, Rosa, Rose, Jones, Long and Harley until their criminal matters were resolved, which counsel for the City agreed to (*see* ECF No. 36-3), as it must, N.Y. Gen. Municipal Law § 50-h(5). Following this adjournment, however, Plaintiffs never contacted the City to reschedule their hearings, and instead filed the instant Complaint. "[S]everal courts have held…that a plaintiff's failure to attend a [§] 50-h [h]earing—*no matter the reason*—is a complete bar to his state law claims against the City." *Johnson v. City of New York*, No. 15 CIV. 6915 (ER), 2019 WL 294796, at *14 (S.D.N.Y. Jan. 23, 2019) (emphasis in original) (quoting *Duncan v. City of New York*, 11 Civ. 3901 (ENV), 2018 WL 3421312, at *3 (E.D.N.Y. July 13, 2018)). It is a plaintiff's responsibility to resolve any discrepancies regarding the scheduling of a Section 50-h hearing. *See generally Gilliard v. City of New York*, No. 10-CV-5187 (NGG)(CLP), 2013 WL 521529, at *16 & n.20 (E.D.N.Y. Feb. 11, 2013) (placing the burden on plaintiff to ensure a properly scheduled 50-h hearing and declining to excuse plaintiff's failure to appear where plaintiff's previous counsel acted unreasonably by failing to follow up with the Comptroller's Office for a rescheduled hearing); *Simon v. City of New York*, No. 09-CV-1302 (ENV)(RER), 2011 WL 317975, at *15 n.17 (E.D.N.Y. Jan. 3, 2011), *adopted by*, No. 09-CV-1302 (ENV)(RER), 2011 WL 344757 (E.D.N.Y. Feb. 1, 2011) (finding, where plaintiff insisted that defendants never informed him of the new date for his 50-h hearing, that "even if [plaintiff] did not get the notice of the rescheduled hearing, precedent suggests that it is the claimant who is required to ensure that the hearing she has adjourned is rescheduled to a new date"). In dismissing state law claims for nonattendance, courts have explained the rationale behind placing the responsibility for rescheduling solely on the plaintiff: "while the City must handle the [scheduling and] rescheduling of thousands of 50-h Hearings, a plaintiff is only concerned with [his] own and is in a better position to ensure that the parties are on the same page." *See Kennedy v. Arias*, No.

12 Civ. 4166 (KPF), 2017 WL 2895901, at *13 (S.D.N.Y. July 5, 2017). Here, Plaintiffs Dean, O. Bradshaw, Rosa, Rose, Jones, Long, and Harley are "suing the City, and [Plaintiffs] [are] the one[s] responsible for prosecution of this action. Accordingly, [Plaintiffs] [are] in a better position to ensure that all conditions precedent have been met prior to filing suit. Because [they] ha[ve] failed to adhere to this condition precedent prior to filing suit," their state law claims are dismissed with prejudice. *See Johnson*, 2019 WL 294796, at *15.

## CONCLUSION

For the foregoing reasons, the Defendants' partial motion to dismiss the Complaint is GRANTED.

The following claims are dismissed <u>without</u> prejudice: (1) Plaintiffs' claims against Defendants Abreu, Beato, Vitelli, and Lawrence; (2) Plaintiffs Anderson, H. Bradshaw, O. Bradshaw, Bailey, Rose, Jones, and Reynolds' claims for unlawful strip searches; (3) Plaintiffs' failure to intervene claim; (4) Plaintiffs' *Monell* claims based on the final act of a policymaker, a widespread practice, and a failure to train; (5) Plaintiffs' supervisory liability claim; and (6) Plaintiffs' malicious prosecution claims, except for Plaintiffs Rose, Anderson, and O. Bradshaw.

The following claims are dismissed <u>with</u> prejudice: (1) Plaintiffs' state law claims; (2) Plaintiffs Rose, Anderson, and O. Bradshaw's false arrest claims; and (3) Plaintiffs Rose, Anderson, and O. Bradshaw's malicious prosecution claims.

Plaintiffs are granted leave to file an Amended Complaint as to all claims dismissed without prejudice. If Plaintiffs choose to do so, Plaintiffs will have until June 3, 2024 to file an Amended Complaint. Defendants are then directed to answer or otherwise respond by June 24, 2024.

If Plaintiffs fail to file an Amended Complaint within the time allowed, and they cannot show good cause to excuse such failure, any claims dismissed without prejudice by this Order will

be deemed dismissed with prejudice. If no Amended Complaint is timely filed, Defendants are directed to file an answer by June 17, 2024. The parties are then directed to complete and file a Case Management Plan and Scheduling Order by June 24, 2024.

The Clerk of Court is kindly directed to terminate the motion at ECF No. 35.

Dated:    May 13, 2024                                          SO ORDERED:
          White Plains, New York

                                        _____
                                                  NELSON S. ROMÁN
                                                United States District Judge