UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RANDY ANDERSON, et al.,

                    Plaintiff,

-against-

THE CITY OF MOUNT VERNON, et al.,

                    Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: **09/29/2025**

No. 23-CV-3963-NSR

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

    Plaintiffs Randy Anderson ("Plaintiff Anderson"), Heyward Bradshaw ("Plaintiff H. Bradshaw"), Olante Bradshaw ("Plaintiff O. Bradshaw"), Richard Bailey ("Plaintiff Bailey"), Robert Dean ("Plaintiff Dean"), Corey Harley ("Plaintiff Harley"), Thaddeus Jones ("Plaintiff Jones"), Jonathan Long ("Plaintiff Long"), Keith Reynolds ("Plaintiff Reynolds"), Eduardo Rosa ("Plaintiff Rosa"), and Delroy Rose ("Plaintiff Rose") (collectively, "Plaintiffs") bring this action against the City of Mount Vernon ("the City"), Det. Camilo Antonini ("Defendant Antonini"), Sgt. Pedro Abreu ("Defendant Abreu"), Sgt. Wendell Griffin ("Defendant Griffin"), Officer Steven Beato ("Defendant Beato"), Det. Peter Vitelli ("Defendant Vitelli"), Officer Allen Patterson ("Defendant Patterson"), and Officer Abdu I. Lawrence ("Defendant Lawrence"), and Officer Michael Hutchins ("Hutchins") (collectively, the "Defendant Officers," and with the City, "Defendants") in the Complaint. ("FAC," ECF No. 46.) Plaintiffs assert nine causes of action: (i) a 42 U.S.C. § 1983 ("Section 1983") claim for illegal search and seizure against Defendant Officers; (ii) a Section 1983 claim for false arrest against Defendant Officers; (iii) a Section 1983 claim for malicious prosecution against Defendant Officers; (iv) a Section 1983 claim alleging a failure to intervene against Defendant Officers; (v) a Section 1983 Monell claim

against the City; (vi) a Section 1983 claim alleging supervisory liability against Defendant Antonini, and other unidentified supervisory MVPD employees; (vii) a state-law claim for malicious prosecution against Defendant Officers; (viii) a state law claim for intentional infliction of emotional distress against Defendant Officers; and (ix) a state-law claim for "Respondeat Superior Liability."

Defendants move to dismiss Plaintiffs' First Amended Complaint pursuant to Rule 12(b)(6). Although styled as a partial motion to dismiss, Defendants seek dismissal of all claims that remain following the Court's prior ruling—including certain claims that are improperly reasserted despite having been previously dismissed with prejudice. For the following reasons, Defendants' motion is GRANTED in its entirety.

## BACKGROUND

The following facts are taken from the Complaint and assumed to be true for the purposes of Defendants' Motion. On May 12, 2020, Plaintiffs "were gathered and hanging out" on a public sidewalk in the City of Mount Vernon. (FAC ¶ 27.) The FAC alleges that Plaintiffs were not engaged in any criminal activity. (*Id*. ¶ 28.) Shortly after 5:30 p.m., marked and unmarked Mount Vernon Police Department ("MVPD") vehicles pulled up, and MVPD officers leapt out with guns drawn shouting for Plaintiffs and others to get down on the ground. (*Id*. ¶¶ 31-33.) Plaintiffs were handcuffed and transported to MVPD headquarters. (*Id*. ¶ 35.) At headquarters, each Plaintiff was taken to a separate cell where they were strip and/or body cavity searched. (*Id*. ¶¶ 38-40.)

Specifically, (1) Plaintiff Harley was strip and body-cavity searched by Defendant Antonini (*Id*. ¶¶ 42-43); (2) Plaintiff Rosa was strip searched by Defendant Antonini (*Id*. ¶¶ 46-47); (3) Plaintiff Long was strip searched by Defendant Patterson (*Id*. ¶ 49); (4) Plaintiff Bailey was strip searched by "[o]ne of the Defendant Officers, or an MVPD Officer" (*Id*. ¶ 51);

2

(5) Plaintiff Dean was strip searched by Defendant Antonini in the presence of Defendants Griffin and Patterson (*Id*. ¶ 52); (6) Plaintiff O. Bradshaw was ordered by Defendant Antonini to remove his underwear, squat, and cough (*Id*. ¶ 55); (7) Plaintiff H. Bradshaw was strip searched by Patterson in the presence of Defendants Beato and Lawrence (*Id*. ¶ 58); (8) Plaintiffs Anderson and Rose were strip searched and/ or body cavity searched "one of the Defendant Officers or another MVPD Officer" (*Id*. ¶ 60). Later, "each and every case against [the Plaintiffs] stemming from their unlawful May 12, 2020 arrests was dismissed." (*Id*. ¶ 62.)

Plaintiffs additionally allege that Defendants Antonini, Abreu, Griffin, and Vitelli "by virtue of their ranks, were obligated to supervise members of the MVPD, ensuring that their duties were carried out legally," but failed to do so. (*Id*. ¶ 66.) Further, Plaintiffs claim that the City has long been on actual and/or constructive notice that MVPD officers, including Defendants Abreu, Griffin, Antonini and Vitelli, made illegal arrests and routinely conducted illegal strip and body-cavity searches. (*Id*. ¶¶ 68, 72.) Plaintiffs also allege that "prior to May 2020, the MVPD had received at least 17 allegations of unlawful strip searches by its officers by civilians" and that the City and its policymakers were notified of each of these complaints. *(Id*. ¶ 78.)

The FAC contends that in May 2023, the Westchester County District Attorney's Office announced that it would be seeking to vacate certain convictions from a 2017 law enforcement operation because of inconsistencies between undercover reports and police reports. (*Id*. ¶ 74.) Further, Plaintiffs claim that the "District Attorney's Office expressed concerns about the City's widespread practice of unlawful and inappropriate strip searches. (*Id*. ¶ 81.) Despite these concerns Plaintiffs claim that that the "City failed to take corrective action such as changing its policies, training of its officers, and/or its supervision regarding strip searches." (*Id*. ¶¶ 96-97.)

3

**PROCEDURAL HISTORY**

Plaintiffs filed their Complaint on May 11, 2023. (*See* ECF No. 1.) On October 26, 2023, Defendants filed a partial motion to dismiss the Complaint. (ECF No. 35.) On May 13, 2024, the Court issued an Opinion and Order, granting Defendants' partial motion to dismiss and disposing of certain claims with prejudice and others without prejudice. (*Anderson v. City of Mount Vernon*, No. 23-CV-3963 (NSR) (S.D.N.Y. Jan. 13, 2025); ECF No. 40.) The following claims were dismissed without prejudice: (1) all claims against Defendants Abreu, Beato, Vitelli, and Lawrence; (2) Plaintiffs Anderson, H. Bradshaw, O. Bradshaw, Bailey, Rose, Jones, and Reynolds' claims for unlawful strip searches; (3) Plaintiffs' failure to intervene claim; (4) Plaintiffs' *Monell* claims based on the final act of a policymaker, a widespread practice, and a failure to train; (5) Plaintiffs' supervisory liability claim; and (6) Plaintiffs' malicious prosecution claims, except for Plaintiffs Rose, Anderson, and O. Bradshaw. (*Id*. at 28.) The following claims were dismissed with prejudice: (1) all of Plaintiffs' state law claims to wit: (i) malicious prosecution; (ii) intentional infliction of emotional distress; and (iii) respondeat superior; (2) Plaintiffs Rose, Anderson, and O. Bradshaw's false arrest claims; and (3) Plaintiffs Rose, Anderson, and O. Bradshaw's malicious prosecution claims. (*Id*.) Plaintiffs were granted leave to file an amended complaint for the three surviving claims.

On August 5, 2024 Plaintiffs filed their FAC (ECF No. 46) against Defendants Abreu, Antonini, Beato, Griffin, Lawrence, Patterson, Hutchins, The City of Mount Vernon, Vitelli, and unidentified MVPD employees and officers. The FAC improperly repleads various claims that had been dismissed with prejudice. In response Defendants filed a partial motion to dismiss (ECF No. 55), a Declaration in Support ("Supp. Decl.," ECF No. 56), a Memorandum of Law in

Support ("Supp. Mem.," ECF No. 57), a Reply Memorandum ("Defs.' Reply," ECF No. 59) and a Supplemental Reply ("Defs.' Sur-Reply," ECF No. 62). Plaintiffs filed an Amended Memorandum of Law in Opposition to Defendant's Partial Motion to Dismiss Plaintiffs' First Amended Complaint. ("Pls. Opp.," ECF No. 58.)

## LEGAL STANDARD

### I. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), for "failure to state a claim upon which relief can be granted," a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court will accept the facts in a complaint as true "and then determine whether they plausibly give rise to an entitlement to relief." *Id*. A claim is facially plausible when the factual content pleaded allows the Court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Ultimately, determining whether a complaint states a facially plausible claim upon which relief may be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

### II. Law-of-the-Case Doctrine

The law-of-the-case doctrine "holds that when a court has ruled on an issue, that decision should generally be adhered to by the court in subsequent stages unless cogent and compelling reasons militate otherwise." *Delville v. Firmenich Inc.*, 23 F. Supp. 3d 414, 425 (S.D.N.Y. 2014) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)). *See also In re Peters*,

642 F.3d 381 (2d Cir. 2011) (noting that while not binding the law-of-the-case doctrine counsels against a court revisiting prior rulings absent compelling reasons such as the need to correct a clear error or prevent manifest injustice); *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100 (S.D.N.Y. 2010) (same).

## DISCUSSION

### I. Plaintiffs' State Law Claims

Plaintiffs re-assert a number of state law claims against Defendants that the Court previously dismissed with prejudice under well-settled New York procedural requirements—Plaintiffs' malicious prosecution claim against all Defendants (FAC ¶¶ 142-152), intentional infliction of emotional distress against all Defendants (*Id.* ¶¶ 153-155), and "respondeat superior liability" against the City (*Id.* ¶¶ 156-159).

Specifically, in its prior Opinion and Order, the Court concluded that Plaintiffs Anderson, Bailey, Reynolds, and H. Bradshaw failed to serve proper and timely notices of claim, and Plaintiffs Dean, O. Bradshaw, Rosa, Rose, Jones, Long, and Harley failed to appear for required § 50-h hearings. *See Johnson v. City of N.Y.*, 2019 WL 294796, at *14–15 (S.D.N.Y. Jan. 23, 2019). Because these deficiencies constituted a failure to satisfy conditions precedent to suit, and Plaintiffs either conceded dismissal or offered no cure, these claims were dismissed with prejudice. *See Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (noting strict construction of notice-of-claim requirements). These dismissals remain binding.

### II. Plaintiffs Rose, Anderson, and O. Bradshaw Section 1983 False Arrest Claims and Malicious Prosecution Claims
#### A. Section 1983 False Arrest Claims

Defendants ask the Court to dismiss Plaintiffs Rose, Anderson, and O. Bradshaw's Section 1983 false arrest claims because they later pled guilty to charges associated with their

underlying arrests. (Supp. Mem. at 19-20.) In their opposition papers, "Plaintiffs Rose, Anderson, and O. Bradshaw agree to the dismissal of their false arrest…claims due to their guilty pleas." (Pls. Opp. at 24 n.5.)

Here, this Court previously dismissed the Section 1983 false arrest claims asserted by Plaintiffs Rose, Anderson, and O. Bradshaw with prejudice because they pled guilty to charges in connection with their arrests. (Op. & Order, ECF No. 40 at 9.) As those claims were dismissed with prejudice, they are procedurally barred, and the Court need not address them again.

### B. Malicious Prosecution

The Court also previously dismissed with prejudice Plaintiffs' state malicious prosecution claims because Plaintiffs failed to allege "sufficient facts to establish that [they] w[ere] seized under the Fourth Amendment for malicious prosecution purposes." (*Id.* at 11.) As this claim was dismissed with prejudice, it is procedurally barred, and the Court need not revisit it.

### III. Claims against Defendants Abreu, Beato, Vitelli, and Lawrence

The Court adheres to its prior ruling dismissing all claims against Defendants Abreu, Beato, Vitelli, and Lawrence for lack of particularized allegations supporting personal involvement. It is well settled that to hold a defendant responsible for a constitutional deprivation, a plaintiff must demonstrate, inter alia, the defendant's personal involvement in the deprivation. *Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013). To do so, the plaintiff must "allege a tangible connection between the acts of a [d]efendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). To establish personal involvement, a plaintiff must show that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which

unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Grullon*, 720 F.3d at 139 (citation, italics, and quotation marks omitted). These five categories "still control[ ] with respect to claims that do not require a showing of discriminatory intent" post *Iqbal*. *Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017). Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint "fatally defective on its face." *Id*. (same).

Here, the FAC continues to rely heavily on the phrase "Defendant Officers" without differentiating what each individual did. Plaintiffs offer no specific factual allegations regarding Abreu's involvement, and merely allege that Defendants Beato, Vitelli, and Lawrence were "present" at some point during Plaintiff H. Bradshaw's arrest or strip search. Such vague assertions, without more, do not satisfy the requirement of direct participation, knowledge, or a failure to intervene with opportunity and intent. *See Falls v. Pitt*, No. 16-CV-8863, 2018 WL 3768036, at *6 (S.D.N.Y. Aug. 8, 2018); *Mann v. Daniels*, No. 10-CV-7540, 2011 WL 2421285, at *2 (S.D.N.Y. June 9, 2011).

Even under a failure to intervene theory, a plaintiff must allege that the defendant had a realistic opportunity to prevent the harm and failed to do so. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997). The Amended Complaint is devoid of such factual content. Simply alleging presence is not enough. Courts in this Circuit routinely dismiss failure-to-intervene claims lacking allegations of temporal proximity, opportunity, and capacity to act. *See Clay v. Cnty. of Clinton*, No. 10-CV-239, 2012 WL 4485952, at *14 (N.D.N.Y. Sept.

8

27, 2012); *Roman v. City of Mount Vernon*, No. 21-CV-2214, 2022 WL 2819459, at *15 (S.D.N.Y. July 19, 2022).

Accordingly, the Court finds that Plaintiffs have not cured the corresponding pleading defects. Their allegations remain conclusory and speculative and do not plausibly allege personal involvement under any of the *Grullon* factors. 720 F.3d 133 at 139. The claims against Defendants Abreu, Beato, Vitelli, and Lawrence are therefore dismissed with prejudice.

**IV. Unlawful Search Claims Against Brought by Plaintiffs Anderson, Bailey, Rose, Jones, and Reynolds**

In its prior Opinion and Order, the Court dismissed without prejudice unlawful search claims brought by Plaintiffs Anderson, Bailey, Rose, Jones, and Reynolds, holding that allegations merely stating a Plaintiff was searched by "one of the Defendant Officers" or an "unidentified MVPD Officer" failed to satisfy the pleading standards under Rule 8. *See Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001); *Pierre v. Yurchenko*, No. 22-CV-1171 (NRM) (LB), 2024 WL 1528551, at *5 (E.D.N.Y. Feb. 20, 2024); *Breton v. City of New York*, 404 F. Supp. 3d 799, 812 (S.D.N.Y. 2019). The Court distinguished this case from rare exceptions where group pleading is permissible due to chaotic or obscured circumstances and emphasized that Plaintiffs were allegedly searched in controlled environments—separate rooms or cells—where they reasonably should be able to identify which officers conducted the search. *See Messina v. Mazzeo*, 854 F. Supp. 116, 126 (E.D.N.Y. 1994); *Arias v. East Hartford*, No. 3:20-CV-00895, 2021 WL 3268846, at *4 (D. Conn. July 30, 2021).

Despite that guidance, the FAC does not provide the requisite individualized factual allegations. Plaintiffs Anderson, Bailey, and Rose continue to allege that they were strip searched "by one of the defendants." (FAC. ¶¶ 51, 60.) No particular officer is identified, and there is no assertion that any named Defendant was present, participated, or failed to intervene in a way that

9

satisfies the Second Circuit's personal involvement standard. *See Grullon*, 720 F.3d at 138.

While Plaintiff Bailey describes in more detail the nature of his search, this description does not cure the fundamental defect: the failure to allege who conducted the unconstitutional act. A detailed narrative without an identified actor still violates Rule 8 because it fails to give Defendants fair notice of the claims against them. *See Farmer v. Cnty. of Westchester*, No. 18-CV-2691 (NSR), 2021 WL 4199944, at *6 (S.D.N.Y. Sept. 15, 2021). As this Court has already explained, where searches were conducted in discrete, identifiable settings, Plaintiffs should be able to specify who performed the search, or at minimum, allege facts plausibly linking a named Defendant to the conduct. They have not.

Moreover, there are no new allegations whatsoever concerning Plaintiffs Jones or Reynolds. Their strip search claims remain unsupported by any factual content in the FAC (¶¶ 28–62) and thus fail on their face. The Court is not persuaded by Plaintiffs' reliance on *Messina*, *Lapoint*, and *Snoussi*, which involve chaotic events or group beatings where attribution was inherently obscured. *See Lapoint v. Vasiloff*, 5:15-cv-185 (MAD/ATB), 2017 WL 976947, at *5 (N.D.N.Y. Mar. 13, 2017); *Snoussi v. Bivona*, No. 05-cv-3133, 2010 WL 3924255, *3 (E.D.N.Y. Feb. 17, 2010); *Messina*, 854 F. Supp. at 126. That is not the case here. Alleging that one of multiple officers conducted an unlawful search in a structured custodial setting does not excuse the absence of individualized pleading. *See Pierre*, 2024 WL 1528551, at *5; *Breton*, 404 F. Supp. 3d at 812.

Accordingly, because Plaintiffs were granted leave to amend and failed to cure the deficiencies, and because they offer no new factual content capable of supporting a plausible claim, the unlawful strip search claims of Anderson, Bailey, Rose, Jones, and Reynolds are dismissed with prejudice.

### V. Supervisory Liability Claim

The Court adheres to its prior ruling and dismisses the supervisory liability claim against Defendants Antonini, Abreu, and Griffin, this time with prejudice. In its previous Opinion and Order, the Court held that a supervisory liability claim under § 1983 cannot proceed absent allegations that the supervisor was personally involved in the alleged constitutional violation through their own conduct. *Tangreti v. Bachmann*, 983 F.3d 609, 618–19 (2d Cir. 2020). The Court further found that any such claim against Defendant Antonini was duplicative of the direct unlawful search claim and could not proceed on that basis. *See Martinez v. City of New York*, 564 F. Supp. 3d 88, 105 (E.D.N.Y. 2021); *Pateman v. City of White Plains*, 2020 WL 1497054, at *23 (S.D.N.Y. Mar. 25, 2020).

The Amended Complaint does not cure these deficiencies. Plaintiffs again attempt to plead supervisory liability against Defendant Antonini without alleging new facts, and the claim remains duplicative of the direct claims based on his own actions. As to Defendants Abreu and Griffin, Plaintiffs merely state that they were "obligated to supervise" others by virtue of rank (FAC ¶ 66), which is insufficient under *Tangreti* and does not constitute personal involvement. *See*, 983 F.3d at 619. The Amended Complaint alleges no conduct showing that either defendant violated the Constitution through their own actions or omissions. Accordingly, the § 1983 supervisory liability claim is dismissed with prejudice.

### VI. *Monell* Claim

#### A. Final Policymaker

The Court adheres to its prior ruling and dismisses the *Monell* claim based on a final policymaker theory. Plaintiffs again allege that the Commissioner of Public Safety and the

11

MVPD Chief of Police are final policymakers, but provide no legal authority—such as New York law, city charter provisions, or municipal regulations—to support this conclusion. As previously held, conclusory statements that certain individuals "received complaints" or "supervised investigations" do not plausibly establish that these officials were final policymakers with respect to the challenged conduct. *See Taranto v. Putnam Cnty.*, 2023 WL 6318280, at *21 (S.D.N.Y. Sept. 28, 2023); *Coppola v. Town of Plattekill*, 2018 WL 1441306, at *10 (N.D.N.Y. Mar. 22, 2018). This deficiency is not cured by the FAC. Accordingly, the policymaker theory is dismissed with prejudice.

### B. Failure to Train

The Court again dismisses Plaintiffs' *Monell* claim based on a failure to train theory. Under Second Circuit precedent, to state a *Monell* claim for failure to train, Plaintiffs must plausibly allege that (1) policymakers knew "to a moral certainty" that officers would confront the situation at issue; (2) the situation either presented a difficult choice of the sort that training could meaningfully address or reflected a pattern of constitutional violations; and (3) the wrong choice by an untrained employee would frequently cause the alleged constitutional deprivation. *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992).

Here, Plaintiffs rely heavily on the Department of Justice's investigative report, incorporated by reference, to support their failure-to-train theory. The DOJ found that, even as recently as 2022, senior MVPD officers continued to believe—erroneously—that visual cavity searches were merely strip searches. (Pls. Opp., Ex. A, DOJ Report at 17, 18, ECF No. 58.) The report also noted that MVPD lacked adequate systems to ensure officer compliance with newly implemented policies, and that prior to 2022, MVPD leadership admitted officers did not understand that stripping someone to their undergarments constituted a strip search. (*Id.* at 20,

26-30.) These findings arguably point to a significant failure to train. However, the DOJ's subsequent retraction of the report complicates the weight that can be given to these conclusions at this stage.

Moreover, even taking the DOJ's findings into account, Plaintiffs still fail to plausibly plead deliberate indifference. As this Court previously explained, such a showing requires allegations of a persistent failure to investigate complaints or to discipline offending officers. *See* Op. & Order, ECF No. 40.) But here, Plaintiffs concede that MVPD conducted at least one internal investigation into a named officer's conduct, undermining the notion that the City ignored misconduct altogether. (FAC ¶ 80.) Allegations that the City "failed to correct" officer behavior or "did not alter training" do not, on their own, identify any specific deficiency in the training program. (*See Op. & Order*, Ex. A to Decl. in Supp. of Defs.' Partial Mot. to Dismiss Am. Compl., *Anderson,* No. 23-CV-3963 (NSR), ECF No. 40.) These allegations are materially indistinguishable from those in the original complaint, which this Court previously found inadequate. *See Roman*, No. 21-CV-2214, 2022, at *23 (dismissing *Monell* claim where plaintiffs failed to identify "a specific deficiency" in the training program or allege complete failure to investigate officer misconduct).

Further, whether the internal investigation was thorough or sufficient is a separate question not properly resolved at the motion-to-dismiss stage. But in the absence of factual allegations showing what training was required and how its absence caused the alleged constitutional harm, Plaintiffs have not met their burden under *Monell*. Absent well-pled factual allegations identifying a concrete deficiency in MVPD's training program, and in light of the ambiguity surrounding the DOJ's now-retracted findings, Plaintiffs' failure-to-train theory claim is therefore dismissed without prejudice.

### C. Widespread Practice

The Court dismisses the *Monell* claim based on widespread practice without prejudice. To plausibly allege *Monell* liability under this theory, Plaintiffs must show that the challenged conduct was so persistent and widespread as to constitute a "custom or usage" of the municipality, even if not formally memorialized. *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996). A widespread practice must be "so manifest as to imply the constructive acquiescence of senior policy-making officials." *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992).

Here, the FAC adds greater detail, including 17 specific civilian complaints, lawsuits, and—like the failure-to-train theory—extensive quotations from the Department of Justice's investigative findings regarding the MVPD. (*See* Pls. Opp., Ex. A, ECF No. 58.) Although the DOJ formally retracted its April 2023 report following a change in administration, the original findings alleged a pattern or practice of unconstitutional conduct. (*Id*. at 2, 7, 13-18.) The DOJ further stated that these constitutional violations were rooted in systemic deficiencies in MVPD's policies, training, and accountability. (*Id*. at 7, 20.) One commanding officer admitted that MVPD officers strip searched "every single person who walked in th[e] building." (*Id*. at 13.) After MVPD conducted an internal review in 2023 prompted by the DOJ investigation, the Department itself concluded, "[t]here is a question of whether the Mount Vernon Police Department had a history of regularly conducting strip searches on arrestees. The simple answer to this would be [] yes." (*Id*. at 13.) MVPD now claims to have ended these practices by implementing a written policy and updated training in 2022 but also concedes that it has no oversight or accountability mechanisms in place to ensure compliance. (*Id*. at 14-16.) Indeed, as

recently as April 2024, a supervisory officer reported that officers may still be conducting strip searches outside the presence of supervisors—contrary to official policy. (*Id.* at 15.) Other supervisors confirmed that, in practice, officers routinely conducted strip searches, and at times visual cavity searches, during the execution of general search warrants. (*Id*. at 14-16.)

Whether the DOJ's legal conclusions retain weight following retraction is uncertain, and the Second Circuit has not addressed whether such withdrawn findings offer support in the *Monell* claims context. However, it must be acknowledged that courts in this Circuit have recognized that agency findings—while not dispositive—may be "highly probative" when corroborated by other evidence. *See United States v. City of New York*, 717 F.3d 72, 85–86 (2d Cir. 2013) (acknowledging that while agency findings are not binding they are relevant and persuasive when backed by sufficient factual support); *See People United for Children, Inc. v. City of New York*, 108 F. Supp. 2d 275, 296–97 (S.D.N.Y. 2000) (noting that while DOJ findings were not controlling, such findings were analyzed at length, noting their probative value in showing patterns and potential constitutional violations); *See Floyd v. City of New York*, 959 F. Supp. 2d 540, 571–72 (S.D.N.Y. 2013) (considering a DOJ report and other agency studies, acknowledging them as relevant context; implying such reports can inform judicial findings, especially when aligned with testimony or statistics). The Court emphasizes that the factual evidence referenced in the DOJ's report—including officer interviews and internal admissions—may still prove relevant, even if the agency has withdrawn its legal conclusions. *See Marisol A. v. Giuliani*, 929 F. Supp. 662, 685 (S.D.N.Y. 1996) (holding that agency reports can help establish patterns, especially when supported by independent date or testimony; referencing DOJ and other governmental reports as supporting evidence of systemic failure in NYC's child welfare system); *See United States v. Puerto Rico*, 764 F. Supp. 2d 249, 257

15

(D.P.R. 2011) (noting that despite the political challenges of DOJ findings the court still treated earlier findings as probative in evaluating long standing constitutional deficiencies in the police department).

Because Plaintiffs have not sufficiently pled a widespread practice of unconstitutional conduct, however, the Court still dismisses the *Monell* claim but without prejudice to renew. Plaintiffs may replead this claim in the Second Amended Complaint should they develop additional factual support or receive further appellate guidance.

## CONCLUSION

For the reasons stated above, the Court dismisses with prejudice the following claims which were previously dismissed and improperly reasserted in the First Amended Complaint: all claims against Defendants Abreu, Beato, Vitelli, and Lawrence; all state law claims, including those for malicious prosecution, intentional infliction of emotional distress, and respondeat superior liability; and the false arrest claims brought by Plaintiffs Rose, Anderson, and O. Bradshaw. The Court further dismisses with prejudice the following claims for failure to cure the deficiencies identified in the Court's prior ruling: the unlawful search claims brought by Plaintiffs Anderson, H. Bradshaw, O. Bradshaw, Bailey, Rose, Jones, and Reynolds; the failure to intervene claim; the *Monell* claim based on the final act of a policymaker; the supervisory liability claim; and all malicious prosecution claims, except those brought by Plaintiffs Rose, Anderson, and O. Bradshaw. Accordingly, Defendants Antonini, Abreu, Beato, Griffin, Vitelli, Lawrence, and Hutchins are terminated from the action.

The only remaining claims—Plaintiffs' *Monell* claims based on failure to train and a widespread practice of unconstitutional conduct—are dismissed without prejudice.

Plaintiffs are granted leave to file a Second Amended Complaint for those claims

dismissed without prejudice. Plaintiff will have until October 13, 2025 to do so, consistent with this Order. Plaintiffs are advised that the Second Amended Complaint will replace, not supplement, the First Amended Complaint, and so any claims they wish to pursue must be included in, or attached to, the Second Amended Complaint. Should Plaintiffs file a Second Amended Complaint, Defendants are directed to answer or otherwise respond to the Second Amended Complaint by November 5, 2025.

If Plaintiffs fail to file a Second Amended Complaint within the time allowed, those claims dismissed without prejudice by this Order will be deemed dismissed with prejudice and the case will be terminated. The Clerk of Court is kindly directed to terminate the motion at ECF No. 55 and to terminate Defendants Antonini, Abreu, Beato, Griffin, Vitelli, Lawrence, and Hutchins from the action.

SO ORDERED.

Dated: September 29, 2025
White Plains, New York

Nelson S. Román, U.S. District Judge